BENJAMIN B. WAGNER
United States Attorney
KAREN A. ESCOBAR
MICHAEL G. TIERNEY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:13CR0109 LJO |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM, FORMAL OBJECTIONS TO PRESENTENCE REPORT, AND RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM |
| v. | |
| SERGIO PATRICK RODRIGUEZ, | |
| Defendant. | DATE: 9/28/15<br>TIME: 8:30 A.M.<br>COURT: HON. LAWRENCE J. O'NEILL |

The United States of America, by and through its undersigned counsel hereby submits this sentencing memorandum and formal objections to the Addendum filed herein on September 17, 2015, to the presentence report filed herein in connection with the defendant's original sentencing. C.R. 223. The United States also responds to the defendant's sentencing memorandum filed herein on September 21. C.R. 224.

## I.    STATEMENT OF FACTS

The basic facts are set forth in the presentence memorandum. The Court is familiar with the facts, having presided at the trial in this matter.

## II.    FORMAL OBJECTIONS TO PRESENTENCE REPORT

The United States requests that the following corrections, as requested in its informal objections submitted to the probation officer on September 8, be incorporated in the final presentence report dated

United States' Sentencing Memorandum                    1

1    February 19, 2014.

2        **A.    The Offense Conduct**

3        ¶5.  A pilot and tactical flight officer for Air 1[1] of the Skywatch program for the Fresno Police

4    Department responded to a call for assistance.  Since the defendant's sentencing, the name of Children's

5    Hospital Central California has reverted to Valley Children's Hospital.

6        ¶7.  The tracking lasted for approximately 3 to 4 seconds each time. The tactical flight officer

7    communicated with ground units and used the Night Sun or spotlight to guide the officers on the ground.

8        ¶8. Coleman, not Rodriguez, said it was not her fault if the helicopter flew in front of the laser she

9    was pointing into the air.

10        ¶9.  It should be noted that following advice of his Miranda rights and after Coleman's arrest,

11    Rodriguez became upset and directed the officers to let Coleman go.  He admitted to pointing the laser at the

12    helicopter and admitted to personally possessing it.  Rodriguez also admitted to seeing the reflection of the

13    laser off the side of the helicopter. It should be noted that Rodriguez directed Coleman not to say anything

14    else and explained to her that as long as she told the court that she was only trying to see how far the laser

15    went, she would only get a ticket.

16        ¶12.  The probation officer concluded that "[n]either Rodriguez nor Coleman appear to have had an

17    aggravating or mitigating role as both are believed to be equally culpable."  This conclusion is contrary to the

18    Court's findings, as discussed in the Argument Section below.

19        ¶13.  At Rodriguez's original sentencing, the Court found that the defendant qualified for the official

20    victim enhancement pursuant to U.S.S.G. § 3A1.2.

21        ¶14.  Although the pilots did not suffer physical injury, they suffered psychological effects and visual

22    disturbance as a result of the laser strikes of the cockpit.  The laser pointer in this case could and did create a

23    distraction, glare, and after image to the occupants of Air 1 and could and did create a distraction for the pilot

24    of Air George. The government's experts testified to the high-powered effects of the laser and the fact that

25

26    ───────────────

27    [1] The Fresno Police Department's helicopter is Air 1, not Air-1 (the name given to the Kern County Sheriff's Office helicopter).

28    United States' Sentencing Memorandum                    2

the beam was deliberately aimed at the cockpit window.  When not aimed at the cockpit window, the interior

of the helicopter would not have lit up and the laser beam would only have reflected off the exterior of the

helicopter.  In addition, Air 1's primary law enforcement mission was disrupted when it became the victim of

the laser illumination.

The visual effects of the laser were not only felt by the airmen but corroborated by the government's

expert, Joshua Hadler, a physicist for the National Institute of Standards and Technology.  Hadler testified at

trial that the laser beam emitted by the laser pointer in this case was 13 times more powerful than the legal

limit for handheld lasers and was capable of significant visual interference of the airmen, given the distances

and altitudes at which the helicopters were traveling when struck.

¶15.  As discussed more fully in the Argument Section below, the government objects to the

probation officer's determination that an obstruction of justice enhancement is not warranted.

### B.    Offense Level Computations

This portion of the final presentence report has been replaced by the addendum.  Objections to the

addendum are noted below.

### C.    Personal and Family Data

¶73.  It is not known whether the defendant and co-defendant are currently involved in a relationship.

At trial, Coleman testified that she considered Rodriguez her husband.  R.T. (12-18-13) at 494.

### III.    OBJECTIONS TO ADDENDUM TO PRESENTENCE REPORT

The United States objects to the following statement in the first paragraph of page 2 of the

Addendum:

> However, evidence does not support that he was attempting to interfere with the pilot or the
> safe flight of the helicopter.

The Ninth Circuit found that there was insufficient evidence that Rodriguez willfully attempted to interfere

with the aircraft with reckless disregard for human life in order to support a conviction under 18 U.S.C. §

32(a)(5) and (a)(8).  *United States v. Rodriguez*, 790 F.3d  951, 953 (9th Cir. 2015).  The Ninth Circuit did

not hold, as the defendant maintains, that the government failed to satisfy the objective component of

recklessness required for conviction under Section 32(a)(5) and (a)(8).  Def. Sen. Mem. at 2:3-4.  Instead, the

United States' Sentencing Memorandum                    3

Ninth Circuit focused on Rodriguez's subjective intent and determined that the evidence did not establish

that he was aware of the risk created by his intentional conduct.

However, the Ninth Circuit did not find that Rodriguez's conduct was not dangerous. On the

contrary, the Ninth Circuit specifically found:

> **His conduct was dangerous and cannot be condoned. He deserves a § 39A conviction and a sentence that reflects the seriousness of his crime.**

*Id.* at 961 (emphasis added). Recognizing the dangerousness of Rodriguez's conduct, the Ninth Circuit

acknowledged the risk of harm to the aircraft posed by the laser strikes – which interfered with its safe

operation.

### A.      Base Offense Level

The government objects to the statement in the first full paragraph under Base Offense Level at page

2 of the Addendum:

> Evidence reveals he was "fooling around' with a laser pointer and attempted to see how far his laser would shine at night. While he shined the laser at overflying helicopters, evidence does not indicate he was attempting to interfere with the pilot(s).

The evidence indicates that the defendant deliberately aimed the laser pointer at the cockpit and

struck the cockpit multiple times, causing temporary visual interference of the pilots and tactical flight

officer. As noted above, the Ninth Circuit found the evidence insufficient to support a finding that the

defendant <u>willfully</u> attempted to interfere with the pilots.

The government also disagrees with the conclusion that no assault occurred. The pilots and tactical

flight officer were assaulted by the laser strikes. However, it appears that the most analogous guideline is

found at U.S.S.G. § 2A5.2.

### B.      Victim Related Adjustment

The government objects to the conclusion that the official victim enhancement, pursuant to U.S.S.G.

§ 3A1.2, does not apply.

### C.      Adjustment for Role in the Offense

The government objects to the probation officer's determination that a role adjustment does not

United States' Sentencing Memorandum                4

apply.  A two-level managerial/supervisory role enhancement is warranted in this case, in light of new evidence obtained after Rodriguez's sentencing relating to his abusive control of Coleman, as discussed in greater detail in the Argument Section below.

**D.      Adjustment for Obstruction of Justice**

A two-level obstruction of justice enhancement is warranted based on obstructive conduct at the time of sentencing and before trial, as discussed in the objection to paragraph 15 of the presentence report.

**E.      Adjusted Offense Level (Subtotal)**

In light of the foregoing, the adjusted offense level should state 19, rather than 9.

**F.      Total Offense Level**

In light of the foregoing, the total offense level should state 19, rather than 9.

**G.      SENTENCING OPTIONS**

**Guideline Provisions:**  Based upon a total offense level of 19 and a criminal history category of VI, the guideline imprisonment range should be 63 to 78 months, rather than 21 to 27 months. However, since the statutory maximum term is 60 months, the applicable guideline sentence is 60 months.

**H.      FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

1.      The Nature and Circumstances of the Offense

Children's Hospital Central California should now be referenced as Valley Children's Hospital, as the hospital has since reverted to its original name.

2.      History and Characteristics of the Defendant

This section should reference the abusive relationship and control that the defendant exerted over co-defendant Coleman, which gave rise to a battered woman's syndrome, a significant mitigating factor in resentencing Coleman.  This evidence was produced and considered by the Court in connection with Coleman's sentencing and resentencing after Rodriguez was sentenced in March, 2014.

3.      The Need for the Sentence Imposed

The guideline range, as noted above, should be 63 to 78 months.  However, since the statutory maximum term is 60 months, the applicable guideline sentence is 60 months.

United States' Sentencing Memorandum                   5

1    Even if the sentencing enhancements discussed herein do not apply, a sentence of 60 months

2    imprisonment is reasonable and appropriate in light of the sentencing factors set forth under 18 U.S.C. §

3    3553(a).

4    **I.      SENTENCING RECOMMENDATION**

5        The Total Offense Level should be 19, not 9.

6        The Guideline range should be 63 to 78 months. However, since the statutory maximum term is 60

7    months, the applicable guideline sentence is 60 months.

8        The recommended sentence should be 60 months.

9                1.      Justification

10       The advisory guideline sentence is 60 months.  A sentence of 60 months is also substantively

11   reasonable in light of the Section 3553(a) factors discussed in the presentence report and Addendum.

12       Psychological counseling for domestic violence/anger management might also be warranted.

13               2.      Recommendation

14       A prison term of 60 months should be recommended.

15   **IV.      ARGUMENT**

16   **A.      A Guideline Sentence of 60 Months Is Procedurally Sound.**

17       A total offense level of 19 derived from a BOL 9, a six-level official victim enhancement, and a two-

18   level managerial role enhancement is proper.  Applying a CHC VI, the correct advisory guideline range starts

19   at 63 and is trumped by the statutory maximum prison term of 60 months.

20               1.      A Six-Level Official Victim Enhancement Is Warranted.

21       The evidence supports this Court's finding at Rodriguez's original sentencing that a six-level official

22   victim enhancement, pursuant to U.S.S.G. § 3A1.2(c), applies.  Rodriguez was aware – or, at the very least,

23   had "reasonable cause to believe" -- that the second victim helicopter, Air 1, was a law enforcement

24   helicopter when he repeatedly aimed at and struck the cockpit of the aircraft with a dangerously bright laser

25   beam.  U.S.S.G. § 3A1.2(c).  Air 1 was only 500 feet above ground.  It was marked in big black and white

26   letters "Fresno Police."  The helicopter was reflective and well-lit.  The Night Sun utilized by the officers

27

28   United States' Sentencing Memorandum                    6

1    emitted a light consistent with the type of spotlight utilized by a police helicopter to apprehend offenders.

2    Coleman admitted to FBI Special Agent Chet Johnston before trial and both Coleman and a neighbor, Jessica

3    Cerrillo, testified at trial that they were aware of the police helicopter's presence.  In addition, both Coleman

4    and Cerrillo testified at trial that they were aware of the police spotlight.

5         Further, the offense of conviction need not be motivated by the official victim status for the

6    enhancement to apply.  A six-level enhancement is warranted  when "in a manner creating a substantial risk

7    of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a

8    law enforcement officer, assaulted such officer during the course of the offense."  The defendant assaulted

9    Fresno Police Officers/Pilot Kenneth Schneider and Tactical Flight Officer George Valdez when he aimed

10   the laser pointer directly at the cockpit window of Air 1, emitting the powerful laser beam.

11        Indeed, the Court found at the defendant's original sentencing that the official victim enhancement

12   applies in this case.[2]  The Ninth Circuit did not consider the applicability of this enhancement on appeal.  A

13   six-level official victim enhancement is warranted in this case.

14                    2.        A Two-Level Managerial/Supervisorial Role Applies.

15        In resentencing Coleman, the Court found that Coleman played a minor role in the offense based on

16   its finding that Coleman suffered from "a battered woman['s] syndrome" resulting from the control of her

17   abusive boyfriend, Rodriguez.  R.T. (5-18-15) at 6:12.  The Court's finding that Coleman acted completely at

18   the direction of Rodriguez as a result of his abusive relationship was supported by sealed documents

19   submitted by Coleman and is supported by prior police reports of domestic violence provided in discovery

20   and considered by the probation officer in drafting the presentence reports for both Coleman and Rodriguez.

21        Rodriguez and Coleman had prior documented contacts with the Clovis Police Department when

22   they responded to a call for a domestic disturbance at the defendants' residence at the Ashtree Apartments at

23   3131 North Willow in Clovis on January 1, 2012 (seven months before the laser incident).  At that time,

24   Coleman falsely identified Rodriguez, who then had outstanding warrants for his arrest.  January 1, 2012,

25

26

27        [2] The probation officer originally made no finding with respect to the applicability of  the official
     victim enhancement, deferring to the Court.

28    United States' Sentencing Memorandum                    7

1    was not the first time law enforcement responded to a domestic disturbance call involving Coleman and

2    Rodriguez.

3          On September 25, 2008, Fresno Police officers also responded to a call at another apartment where

4    Coleman and Rodriguez then resided. Coleman had a "busted" lip with blood around her lips and was

5    reported to be "uncooperative."  She told the police, "Sergio didn't do anything to me."  However, she had a

6    strong odor of alcohol emitting from her breath and admitted that she and Rodriguez had been consuming

7    shots of Jack Daniels with their neighbors.  She reported that Rodriguez became enraged for no reason and

8    began pushing her.  She also admitted to "previous domestic violence incidents."  The September 25, 2008,

9    incident resulted in the domestic violence conviction referenced at page 11 of the presentence report and is

10   alluded to at page 7 of the Addendum.

11         Commenting on Rodriguez's control over Coleman, the Court stated at Coleman's resentencing:

12             He takes advantage of you.  He tries to manipulate you like a puppet.

13                                            * * *

14             I think that he wholly dominated Ms. Coleman in every way possible and he took advantage
              of her in every way possible.

15

16   R.T. (5-18-15) at 5:11-12, 12:11-13.

17         Based on the foregoing, the Court granted a two-level mitigating role reduction in resentencing

18   Coleman.  Accordingly, it is appropriate to find that Rodriguez played a managerial/supervisory role as a

19   result of the control that he held over Coleman in the context of an abusive relationship and specifically

20   directing criminal activity by handing the laser to Coleman and encouraging her to point the laser at the

21   helicopter and directing her not to make any more statements to the police and to tell the court that she was

22   only trying to see how far the laser would reach. *See, e.g, United States v. Herrera,* 878 F.2d 997, 1002 (7th

23   Cir. 1989) (defendant's control over his wife who acted at his behest "and did what she was told" was

24   sufficient to merit finding that defendant was "organizer" under section 3B1.1(c)).

25

26

27

28   United States' Sentencing Memorandum                    8

1          3.        A Two-Level Obstruction of Justice Enhancement Applies.

2          Pursuant to the Sentencing Guidelines, the Court must enhance a defendant's offense level by two

3 levels "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the

4 administration of justice during the investigation, prosecution, or sentencing of the instant offense."

5 U.S.S.G. § 3C1.1.

6          The evidence indicates that the defendant impeded or obstructed justice by providing materially false

7 information to the Court at the time of sentencing about the offense.  At sentencing, the defendant blamed his

8 young children for the laser incident.  As the Court remarked at Rodriguez's initial sentencing hearing:

9          you are not even telling me what you did, except to say that you gave it to your children and they
           were the ones that did it.
10
11 R.T. (3-10-14) at 8:10-12.  Such conduct is specifically noted in the Guidelines as constituting obstructive

12 conduct.  U.S.S.G. § 3C1.1, comment. n. 1 and 4(F).

13          An obstruction of justice enhancement is also warranted in light of the defendant's pretrial

14 obstructive conduct, *i.e*., the multiple inconsistent statements about the offense and directing Coleman not to

15 make any additional statements to law enforcement authorities or the court and advising that she would just

16 get it ticket if she indicated she was simply pointing the laser in the sky.

17          4.        An Acceptance of Responsibility Reduction Is Not Warranted.

18          The defendant now objects to the probation officer's determination that he does not qualify for a two-

19 level reduction for acceptance of responsibility.  The defendant, however, waived this objection by failing to

20 submit an informal objection to the probation officer's finding that the reduction does not apply.  Local Rule

21 460(h) ("no objections may be made to the presentence report other than those previously submitted to the

22 probation officer"). In his informal objections, the defendant "concurs with the sentencing calculation of an

23 offense level 9 . . . and a criminal history category of VI without enhancements, for a sentencing range of 21-

24 27 months."[3]  Def. Informal Objections to Advisory Guideline Addendum at 1.

25

26

_____

27          [3] Applying a two-level reduction for acceptance of responsibility without enhancements and applying a CHC VI would produce a guideline range of 15 to 21 months.

28   United States' Sentencing Memorandum                    9

1    Notwithstanding waiver of the issue, the defendant does not qualify for such reduction.

2    In considering the applicability of a reduction for acceptance of responsibility, the commentary to

3    U.S.S.G. § 3E1.1(a) states that the adjustment "is not intended to apply to a defendant who puts the

4    government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and

5    only then admits guilt and expresses remorse."  U.S.S.G. § 3E1.1(a), comment., n. 2; *United States v. Innie*, 7

6    F.3d 840, 848 (9th Cir. 1993).  While the commentary also provides that "[c]onviction by trial" should not

7    "automatically" preclude application of the two-level adjustment, a defendant who puts the government to its

8    proof rarely qualifies for an adjustment.  U.S.S.G. § 3E1.1(a), comment., n.2.  "In each such instance, . . . a

9    determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements

10   and conduct."  *Id*.  In light of the commentary to Section 3E1.1(a), the reduction is not warranted in this case.

11   *United States v. Anderson*, 942 F.2d 606, 612-14 (9th Cir. 1991) (*en banc*) ("[W]e hold that courts shall: (1)

12   consider the guideline and commentary together," disregarding the commentary only if it is not possible to

13   construe it consistently with the guideline).

14   Rodriguez did not assert issues at trial that did not relate to his factual guilt.  At trial, Rodriguez

15   contested his factual guilt by relying on Coleman's testimony that their toddlers were responsible for the

16   laser strikes.  In closing argument, both Rodriguez's and Coleman's attorneys argued that the children were

17   playing with the laser.  R.T. (12-19-13) at 659, .  Rodriguez's attorney even questioned whether they actually

18   pointed the laser "at things or a helicopter."  R.T. (12-19-13) at 662:22-23.

19   The defendant's efforts to challenge "the essential factual elements" of the charges relating to the

20   laser offense was a defense strategy, which Rodriguez was entitled to present, but which obviously failed.

21   U.S.S.G. § 3E1.1(a), comment., n. 2.  Having thus put the government to its burden of proof, Rodriguez

22   clearly was not automatically entitled to an adjustment for acceptance of responsibility.

23   At his initial sentencing, Rodriguez continued to minimize his involvement and shift blame.

24   Rodriguez's constant attempts to minimize his own involvement and blame others are inconsistent with

25   acceptance of responsibility.  *United States v. Scrivener*, 189 F.3d 944, 948 (9th Cir. 1988) (defendant's

26   attempts to minimize his own involvement and blame his son were inconsistent with acceptance of

27

28   United States' Sentencing Memorandum                10

1   responsibility).

2       While the commentary to Section 3E1.1(a) recognizes that in certain limited cases a defendant who

3   puts the government to its burden of proof at trial may be entitled to a reduction, such a reduction is not

4   warranted, as discussed above, unless the defendant clearly demonstrates a recognition and affirmative

5   acceptance of personal responsibility for his criminal conduct based primarily upon pretrial statements and

6   conduct.  U.S.S.G. § 3E1.1, comment., n.2.  A defendant makes such a demonstration when he "admits guilt

7   and expresses remorse."  *Id*.

8       As to the former, the defendant has never fully admitted guilt before or after trial.  Moreover, as

9   discussed above, the acceptance of responsibility reduction is intended to reward those defendants who not

10  only admit guilt but express genuine remorse for the harm caused by their actions.  *United States v. Davis*, 36

11  F.3d 1424, 1435-36 (9th Cir. 1994) (defendant not entitled to adjustment where there was no affirmative

12  evidence of contrition on the record).  Rodriguez has never shown any sign of remorse or contrition.  He put

13  the government to its proof at a contentious trial.  He also showed no remorse at the time of his initial

14  sentencing and blamed everyone but himself, as the Court found.  R.T. (3-10-14) at 14.

15      Based on the defendant's failure to fully "admit[] guilt and express[] remorse," a two-level reduction

16  for acceptance of responsibility is without foundation.  U.S.S.G. ' 3E1.1, comment.,  n. 2.

17      **B.      A Sentence of 60 Months Is Substantively Reasonable.**

18      Regardless of the proper advisory guideline range, a sentence of 60 months is reasonable in light of

19  the factors set forth under 18 U.S.C. § 3553(a).

20      A 60 month sentence takes into account the severity of the offense, as articulated by the Ninth Circuit

21  in the *Rodriguez* opinion.  The defendant used a green laser pointer to track and repeatedly strike two

22  aircraft, the Children's Hospital helicopter (Air George) and a Fresno Police Department helicopter (Air 1).

23  The laser strikes created a distracting glare for the occupants of the Children's Hospital medical transport

24  helicopter (Air George) and Fresno Police Department helicopter (Air 1) and significantly diminished Fresno

25  Police Pilot Schneider's ability to see and control Air 1.  As Dr. McLin previously noted, the visual

26  interference resulting from the defendant's conduct in this case had the potential to create catastrophic

27

28  United States' Sentencing Memorandum                    11

1   results, *i.e.*, "death due to a crash caused by visual interference." C.R. 149.

2          A 60 month sentence would also have a significant deterrent effect. From 2011 to 2014, there have

3   been over 16,000 laser illumination incidents reported to the Federal Aviation Administration. Airports in

4   the Eastern District of California reported approximately 150 laser strikes in 2014. Fresno reports the

5   highest number of laser strikes. The number of reported laser illumination incidents is particularly

6   alarming, since "the misuse of laser devices poses a serious threat to aviation safety." *See*

7   http://www.faa.gov/pilots/safety/pilotsafetybrochures/media/laser_hazards_web.pdf   Aviators, such as

8   helicopter pilots, are particularly vulnerable to laser illuminations when conducting low-level flight

9   operations at night. *Id.* The laser strikes in this case posed a danger not only to the two victim aircraft but all

10  aircraft that utilized the Fresno Yosemite International Airport. As established at trial, the defendant's

11  residence where the offense was committed was just north of the airport.

12          A 60 month sentence would also avoid sentencing disparity. Since the Ninth Circuit's

13  pronouncements in *Gardenhire* and *Rodriguez*, one laser offender, Timothy Earl Wilson, has been sentenced

14  in this district. In *United States v. Wilson*, Case No. 1:14cr070 AWI, Senior District Judge Anthony W. Ishii

15  sentenced Wilson to a low-end guideline sentence of 37 months in custody. Unlike this defendant, Wilson

16  entered a guilty plea and did not obstruct justice. Wilson did not act in concert with co-defendant who was

17  subject to his control as a result of the battered woman's syndrome. Wilson's criminal history category was

18  V, not VI (Rodriguez's CHC). Wilson was not affiliated with a gang, like Rodriguez. Wilson's criminal

19  history did not include as many convictions and arrests for violent crimes or offenses involving reckless

20  conduct.

21          A 60 month sentence is also appropriate in light of pre-*Gardenhire* sentences that have been imposed

22  on laser strike offenders in this district who were not similarly situated to Rodriguez. Before *Gardenhire*, all

23  of the laser offenders sentenced in this district entered guilty pleas, accepted complete responsibility for their

24  conduct, did not obstruct justice, did not exert abusive control over a co-defendant, did not have a CHC VI

25  which included a history of violent conduct, and were not affiliated with a gang. *See, e.g., United States v.*

26  *Jared James Dooley*, 1:08CR008 LJO (laser defendant with CHC III and methamphetamine addiction

27

28   United States' Sentencing Memorandum            12

sentenced to low-end guideline sentence of 24 months following guilty plea); *United States v. Charles Conrad Mahaffey,* 1:13cr181 LJO (laser defendant who had mental issues and CHC II sentenced to low-end guideline sentence of 21 months following guilty plea); *United States v. Brett Lee Scott*, 1:13cr110 AWI (laser defendant with CHC II sentenced to low-end guideline sentence of 21 months following guilty plea).

## IV.  CONCLUSION

Based on the foregoing, it is respectfully requested that the Court impose a sentence of 60 months in custody and order the surrender of the legally non-compliant Class IIIb laser pointer seized in this case.

Dated:  September 23, 2015                     BENJAMIN B. WAGNER
                                              United States Attorney
                                              MICHAEL G. TIERNEY
                                              Assistant United States Attorney

                                               /s/ Karen A. Escobar
                                              KAREN A. ESCOBAR
                                              Assistant United States Attorney

United States' Sentencing Memorandum          13